Filed 5/2/22  P. v. Bonnaudet CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B309787 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA043504) |
| v. | |
| NORA ANDAYA BONNAUDET, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Yvette Verastegui, Judge.  Dismissed.

———————————

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

———————————

In 2002, a jury convicted defendant and appellant Nora Andaya Bonnaudet of one count of first degree murder (Pen. Code,[1] § 187, subd. (a)) for the death of her husband, Georges Bonnaudet. The jury also found true a special circumstance allegation that she committed the offense for financial gain. (§ 190.2, subd. (a)(1).) The trial court sentenced her to life in prison without the possibility of parole.

We described the facts of the case in detail in our opinion in Bonnaudet's direct appeal, *People v. Bonnaudet* (July 27, 2004, B164987) [nonpub. opn.], and we will summarize them only briefly here: In 1989, Georges[2] executed a will leaving almost all his possessions to Bonnaudet. The relationship later soured, and Bonnaudet began having an affair at some point before December 2000. In the year before his death in 2001, Georges told friends that he wanted to divorce Bonnaudet and did not want her to receive any of his money.

On the morning of October 5, 2001, two unidentified men attacked Georges in a public parking lot, took nothing, and fled. Georges went to the hospital, received treatment, and was discharged. At around 8:50 p.m. that evening, Bonnaudet went into a restaurant and screamed that she needed the police. She claimed that the same men who had attacked Georges that morning had returned, beaten Georges, and put him in the front seat of an automobile nearby. Paramedics arrived on the scene a few minutes later. Bonnaudet told the paramedics that the attack had just happened, but the paramedics found that Georges's body was

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

[2] We refer to the victim by his first name to distinguish him from the defendant. We intend no disrespect.

2

already cold.  The body also exhibited lividity, a condition that typically occurs at least 30 minutes after death.  There were no signs of a struggle either inside or outside the vehicle, and no blood on the sidewalk nearby, as would be expected if Georges had been attacked there as Bonnaudet claimed.

Investigators concluded that Georges had sustained blunt force trauma to the back of the head and had died at some point after 6:45 p.m.  The prosecution theorized that Bonnaudet either killed Georges herself or aided and abetted the killing, then drove Georges's body to the restaurant where she called for help.  We affirmed Bonnaudet's conviction on appeal.  (*People v. Bonnaudet*, *supra*, B164987.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017−2018 Reg. Sess.), which eliminated liability for murder under the natural and probable consequences doctrine, and limited the application of the felony-murder doctrine.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)  The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted.  (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Bonnaudet filed a petition for resentencing under section 1170.95 on February 5, 2019.  The court appointed counsel to represent Bonnaudet, and gave both sides an opportunity to submit briefing.  The court found that Bonnaudet had failed to make a prima facie showing that she was entitled to relief because the record showed that she was "convicted under a true aider and abettor theory," not a theory of felony murder or the natural and probable consequences doctrine.

Bonnaudet filed a timely notice of appeal, and we appointed counsel to represent her. Counsel filed a *Wende*[3] brief raising no issues and requesting that we review the entire record. When a defendant's appointed counsel files a brief raising no issues in an appeal of a denial of postconviction relief, we are not obligated to review the record independently to determine whether there are any arguable issues on appeal. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1039 (*Cole*), review granted Oct. 14, 2020, S264278.) Instead, we follow the procedures set forth in *People v. Serrano* (2012) 211 Cal.App.4th 496 (*Serrano*). Under *Serrano*, both this court and counsel must inform the defendant that she has the right to file a supplemental brief. If the defendant files a supplemental brief, we must address the issues she raises on the merits. Otherwise, we may dismiss the appeal as abandoned. (*Cole*, *supra*, at pp. 1039–1040.)

In this case, both this court and counsel sent letters to Bonnaudet informing her of her right to file a supplemental brief, but we have not received a response. We therefore dismiss the appeal as abandoned.

If the appeal were not abandoned, we would affirm the denial of Bonnaudet's petition. To avoid denial of her petition, a defendant must make a prima facie case that she "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective" as a part of Senate Bill No. 1437. (§ 1170.95, subd. (a)(3).) The effect of the amendments to sections 188 and 189 was to "eliminate[ ] natural and probable consequences liability for first and second degree murder" (*Gentile*, *supra*, 10 Cal.5th at p. 849), and to restrict the application of the felony murder doctrine. (See *id.* at pp. 842–843.)

---

[3] *People v. Wende* (1979) 25 Cal.3d 436.

Where, as in this case, the jury did not receive instructions on either the natural and probable consequences doctrine or felony murder, the trial court may properly conclude that the defendant was not convicted under either of those theories, and deny her petition for failing to make a prima facie case for relief. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677.) We are satisfied that Bonnaudet's counsel has fully complied with his responsibilities.

### DISPOSITION

The appeal is dismissed.
NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.